UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
TOWN OF LEXINGTON, on behalf of itself  )
and all others similarly situated,      )
                                        )
            Plaintiff,                   )
                                        )        Civil Action No. 12-11645-DJC
v.                                      )
                                        )
PHARMACIA CORPORATION, et al.           )
                                        )
            Defendants.                 )
_____)

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT
[Docket Nos. 22, 24]

August 23, 2013

Boal, M.J.

        In this putative class action, plaintiff Town of Lexington ("Lexington") alleges that the

Defendants' predecessor manufactured polychlorinated biphenyl compounds ("PCBs") that were

incorporated into materials used in the construction and renovation of schools between 1950 and

1978, including Lexington's Estabrook Elementary School ("Estabrook").  Lexington claims that

it suffered property damage due to the presence of PCBs in Estabrook and brings claims of

breach of the implied warranty of merchantability and unfair or deceptive acts and practices

under Chapter 93A.  The Defendants have moved to dismiss the Complaint or, in the alternative,

for a more definite statement.[1]  Docket Nos. 22, 24.  For the following reasons, this Court

_____

        [1] On April 2, 2013, the District Court referred the motions to the undersigned for a report
and recommendation.  Docket No. 39.

1

recommends that the District Court deny the Defendants' motions.

I.      PROCEDURAL HISTORY

Lexington filed its Complaint on September 4, 2012.  Docket No. 1.  On November 16,

2012, Defendants Pharmacia Corporation ("Pharmacia" or "Old Monsanto"), Solutia, Inc.

("Solutia") and Monsanto Company ("New Monsanto") (collectively, the "Defendants") filed a

motion to dismiss the Complaint.  Docket No. 22.  The Defendants also filed a motion for a more

definite statement, "only in the event that this Court denies the defendants' motion to dismiss."

Docket No. 24.  Lexington filed oppositions to both motions on December 7, 2012.  Docket Nos.

26, 27.  Lexington also filed an objection to Defendants' request that the District Court take

judicial notice of certain facts and documents in connection with Defendants' motion to dismiss.

Docket No. 28.  The Defendants filed reply memoranda on January 15, 2013.  Docket Nos. 33-

35.  Lexington filed a sur-reply on January 24, 2013.  Docket No. 38.  The Court heard oral

argument on August 22, 2013.

II.     FACTS[2]

A.      The Parties

Lexington is a town existing under the laws of the Commonwealth of Massachusetts.

Complaint, ¶ 5.  Lexington operates a public school district, which includes six elementary

schools, two middle schools, and one high school.  Id.

Pharmacia is a Delaware corporation with its principal place of business in Peapack, New

_____

[2]  Because this case is presently before the Court on a motion to dismiss, the Court sets
forth the facts taking as true all well-pleaded allegations in the Complaint and drawing all
reasonable inferences in the Plaintiff's favor.  See Morales-Tañon v. Puerto Rico Electric Power
Authority, 524 F.3d 15, 17 (1st Cir. 2008).

Jersey.  Complaint, ¶ 6.  Prior to April 2000, Pharmacia was known as Monsanto Company, the company that was the exclusive manufacturer of PCBs in the United States until 1978. Complaint, ¶¶ 6, 13.

Solutia is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri.  Complaint, ¶ 7.  Solutia is a global chemical manufacturer that was formed in 1997 by the divestiture of the chemical business of the company then known as Monsanto Company.  Id.  The divestiture transferred the assets and liabilities of the chemical business, including those related to the manufacture and sale of PCBs, to Solutia.  Id.

New Monsanto is a Delaware Corporation with its principal place of business in St. Louis, Missouri.  Complaint, ¶ 8.  New Monsanto is an agricultural company that was formed in February 2000 under the name "Monsanto Ag Company."  Id.  It was formed as a wholly owned subsidiary of defendant Pharmacia, which at the time was known as Monsanto Company.  Id.  In March 2000, Monsanto Company changed its name to Pharmacia Corporation and Monsanto Ag Company assumed the name Monsanto Company.  Id.

Pursuant to various agreements, Pharmacia, Solutia and New Monsanto have apportioned amongst themselves liabilities for claims arising from Old Monsanto's chemical business, including the manufacture and sale of PCBs.  Complaint, ¶ 9.

B.    Manufacture And Use Of PCBs

PCBs are man-made chemicals that were utilized in a wide range of industrial applications.  Complaint, ¶¶ 12, 14.  Between 1950 and 1978, PCBs were used in the construction and renovation of buildings in the United States in applications, such as caulk, paint, adhesives, and flame retardants.  Complaint, ¶¶ 14-15.  During these years, PCBs were

widely and foreseeably used in the construction and renovation of schools.  Complaint, ¶ 16.

PCBs are very stable compounds that do not degrade readily.  Complaint, ¶ 17.  As a result, PCBs persist in the environment for long periods of time.  Id.  PCBs cycle between air, water, and soil, even when not physically disturbed.  Id.  PCBs easily migrate from building materials such as caulk into surrounding materials such as masonry, wood, drywall, and soil, thereby causing damage to these surrounding materials.  Id.  Plaintiffs allege that Monsanto was the exclusive manufacturer of PCBs in the United States from 1935 to 1978.  Complaint, ¶ 3.

As of January 1, 1979, Congress banned most PCB uses due to their toxicity and adverse health effects.  Complaint, ¶¶ 18-24, 30.  Lexington alleges that Old Monsanto knew of the toxicity of PCBs since as early as the 1930s but continued to manufacture, sell and promote the products until the 1970s.  Complaint, ¶ 26.  Notwithstanding its knowledge, Old Monsanto failed to provide adequate warnings of PCB toxicity, motivated by the company's desire to protect and prolong its very profitable business.  Complaint, ¶ 27.

    C.      <u>Lexington's Detection And Response To PCBs</u>

On September 25, 2009, the EPA issued a press release advising school administrators about the presence of PCBs in school buildings built between 1950 and 1978.  Complaint, ¶ 32. Concurrent with the press release, for the first time, the EPA established public health levels for PCBs in school indoor air.  Complaint, ¶ 33.

Following the EPA's September 25, 2009 press release, Lexington conducted testing at all of its school buildings built or renovated between 1950 and 1978.  Complaint, ¶ 36.  One of the tested schools, Estabrook, was found to have concentrations of airborne PCBs in excess of the EPA's public health levels, and Lexington incurred substantial costs to comply with the

public health levels.  Complaint, ¶¶ 37-38.

       D.     <u>The Putative Class And Causes Of Action</u>

Lexington brings this action on its own behalf and on behalf of a class consisting of all school districts in Massachusetts that have one or more buildings with airborne PCBs in excess of the EPA's public health levels for PCBs in school indoor air.  Complaint, ¶ 40.  The class excludes claims for PCB remediation that commenced more than four years before the filing of this action or any claims for personal injuries.  <u>Id.</u>

Lexington asserts three causes of action against the Defendants: (1) breach of the implied warranty of merchantability - design defect; (2) breach of the implied warranty of merchantability - failure to warn; and (3) unfair and deceptive practices in violation of the Massachusetts Consumer Protection Act, Chapter 93A.  Lexington alleges that the Defendants breached a duty to warn reasonably foreseeable users of PCBs of the dangers of that product.  Complaint, ¶ 54.  Lexington seeks to recover the costs of remediation work and the costs incurred to "investigate, remediate and monitor PCB contamination of the school indoor air."  Complaint, ¶ 4; <u>see also</u> Complaint, ¶¶ 52, 55.

III.    <u>ANALYSIS</u>

       A.     <u>Motion To Dismiss</u>

       1.     <u>Standard of Review</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and

draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc.,

199 F.3d 68, 69 (1st Cir. 2000). While the court must accept as true all of the factual allegations

contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S.

at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir.

2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-

unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'")

(citations omitted). "Something beyond the mere possibility of loss causation must be alleged,

lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of

other people, with the right to do so representing an *in terrorem* increment of the settlement

value." Twombly, 550 U.S. at 558 (internal quotation marks omitted). Accordingly, a complaint

does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any

more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

     2.    Scope Of The Record

As a preliminary matter, the Court must determine what documents it may consider in

connection with the Defendants' motion to dismiss. In support of their motion to dismiss, the

Defendants proffer a number of documents attached to their memorandum of law. See Docket

Nos. 23-1 to 23-10. Lexington objects to consideration by the Court of Exhibits A-C, F-I as well

as any disputed facts that the Defendants seek to establish with those documents.  Docket No. 28.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, "under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment."  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  "These exceptions include documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint."  Id. (internal quotations, modifications and citations omitted).

Exhibits A and B are the Estabrook School Dedication Program and Estabrook School diagram and timeline.  Docket Nos. 23-1, 23-2.  Exhibit C is an Estabrook Newsletter dated October 21, 2012.  Docket No. 23-3.  Exhibits F, G, H, and I are documents published by Lexington on its website and contain information Lexington has chosen to release to the public concerning the history and condition of its school buildings and presence of PCBs in Estabrook. Docket Nos. 23-6 to 23-9.  The Defendants argue that the contested exhibits are public records and should be considered by the Court.  Docket No. 23 at 3 n. 3; Docket No. 35 at 2.  This Court disagrees.

"It is true that, when reviewing a motion to dismiss for failure to state a claim, a court may consider matters of public record."  Freeman, 714 F.3d at 36 (internal quotation marks and citation omitted).  However, "there are limits to that license.  Many documents in the possession

of public agencies simply lack any indicia of reliability whatsoever.  In that regard, they are

unlike official records, such as birth or death certificates and other similar records of vital

statistics."  Id.  "Rather, the phrase 'official public records' when used in the present context,

appears limited, or nearly so, to documents or facts subject to judicial notice under Federal Rule

of Evidence 201."  Id.[3]

"Judicial notice is not the ordinary approach courts take towards finding facts; 'the usual

method of establishing adjudicative facts is through the introduction of evidence, ordinarily

consisting of testimony of the witnesses.'"  Berkowitz v. Berkowitz, No. 11-10483-DJC, 2012

WL 769726, at *4 (D. Mass. Mar. 9, 2012) (internal citations omitted).  "A *high degree of*

*indisputability* is an essential prerequisite."  Id. (emphasis in original, citation omitted).

The Court finds that it may not take judicial notice of the contested exhibits.  The

statements in the documents, on which the Defendants rely, are not the type of readily

ascertainable and undisputed facts that are normally subject to judicial notice.  Indeed, the

parties dispute the import of the exhibits.  See Docket No. 28 at 3-4.  Accordingly, the Court will

not consider Defendants' Exhibits A-C and F-I in its decision.[4]

       3.       The Complaint States A Plausible Claim For Relief
               Of Breach Of Warranty Of Merchantability

The Defendants move to dismiss Lexington's breach of the implied warranty of

---

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, a "court may take judicial notice of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

[4] The Court is also unable to consider Lexington's allegations regarding PCB contamination at the Clarke Middle School.  See Docket No. 26 at 14.  As acknowledged by Lexington's counsel during oral argument, those allegations are not contained in the Complaint.

merchantability claims on the basis that there is no privity between Lexington and the

Defendants.  Docket No. 23 at 7-11.  Prior to 1971, privity of contract was required in a breach

of warranty action.  Id. at 7.  Based on the documents attached to their memorandum of law, the

Defendants argue that it is established that all PCB containing materials were incorporated into

Estabrook no later than July 1961.  Id. at 8.  They further argue that where the sale and

installation of PCB-containing products occurred before 1971, Lexington is unable to state a

claim for breach of warranty unless it proves that it was in privity of contract with the

Defendants.  Id.  Lexington does not dispute lack of privity between it and the Defendants.

Docket No. 26 at 7.  Instead, Lexington argues that its injury occurred after 1973 and, therefore,

privity is no longer required.[5]  Id. at 7-12.  For the following reasons, the Court finds that

Lexington's claims of breach of warranty survive the Defendants' motion to dismiss.

 Breach of warranty law in Massachusetts is presently based on the Uniform Commercial

Code.  M.G.L. c. 106, §§ 2-312 - 2-318.  A defendant breaches the implied warranty of

merchantability that goods be "fit for the ordinary purposes for which such goods are used,"

when it sells an "unreasonably dangerous product."  Commonwealth v. Johnson Insulation, 425

Mass. 650, 660 (1997) (citations omitted).  "An article is not unreasonably dangerous merely

because some risk of harm is associated with its use, but only where it is dangerous 'to an extent

beyond that which would be contemplated by the ordinary consumer who purchases it, with the

ordinary knowledge common to the community as to its characteristics.'"  Id. (citation omitted).

---

 [5] The Defendants focus on the 1971 amendment to the breach of warranty statute, while
Lexington focuses on the 1973 amendment.  Compare Docket No. 23 at 8 with Docket No. 26 at
8 ("In 1973, the legislature further amended Section 2-318 to eliminate the privity requirement
for injuries which occur after the effective date of this act.") (citations omitted).  As seen below,
and as the parties agreed at oral argument, this distinction is immaterial for the purposes of the
Court's present analysis.  The distinction may become material in later proceedings.

A product may be unreasonably dangerous because of a defect in design or because of the absence of an adequate warning, sufficient to alert those who may be sensitive to the product and to allow users to balance the risk of harm against the product's social utility.  Id. at 661 (citations omitted).

The Massachusetts legislature has passed various amendments to the original breach of warranty statute, enacted in 1957, St. 1957, c. 765.  See Payton v. Abott Labs, 551 F. Supp. 245, 246 (D. Mass. 1982).  Prior to 1971, Massachusetts law made privity a prerequisite to the maintenance of any breach of warranty claim against a seller.  Thayer v. Pittsburgh-Corning Corp., 45 Mass. App. Ct. 435, 438 (1998).  In 1971, the statute was amended to allow breach of warranty actions in the absence of privity for sales occurring on or after November 16, 1971, "if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use, consume or be affected by the goods."  Id. (citations omitted).  In 1973, the statute was again amended, eliminating the requirement of privity for any injuries occurring after the effective date of the amendment.  Id.  Massachusetts courts have held that privity is not required for injuries that occurred after December 16, 1973, the effective date of the 1973 amendment.  Payton, 551 F. Supp. at 246.  Accordingly, if Lexington's alleged injuries occurred after December 13, 1973, it does not have to be in privity with the defendant to state a claim for breach of the implied warranty of merchantability.  See Hoffman v. Howmedica, Inc., 373 Mass. 32, 36 (1977); Thayer, 45 Mass. App. Ct. at 439 (Courts "look[] to the *date of injury* rather than to the date of sale or transaction in determining whether the lack of privity defense is available against a plaintiff.") (emphasis in original).

Defendants argue that "Lexington's alleged property damage (i.e., its injury) was

incurred when the PCBs were installed in Estabrook (no later than July 1961)." Docket No. 23 at 8. Lexington argues that the Defendants' allegation regarding the date that PCBs were last used at Lexington's schools is incorrect. Docket No. 26 at 9. In addition, Lexington argues that its injury did not occur until 2009, when the EPA first promulgated public health levels for PCBs and, as a result, Lexington incurred expenses. Id. at 9-10.

This Court finds that even if Lexington's alleged injury occurred, as a matter of law, when PCBs were installed in Estabrook, the last date of installation is a question of fact not appropriate for a motion to dismiss. The Defendants argue that PCBs were installed in Estabrook no later than July 1961 based on a set of documents that the Court has already determined should not be considered in connection with their motion to dismiss. Even if the Court were to consider those documents, they do not irrefutably establish that PCBs were last installed in Estabrook in July 1961, particularly when the sale of PCBs continued until 1978. Complaint, ¶¶ 13, 15, 30. The Court also finds that determination of the date of injury is a question best left to be decided after discovery.[6]

Both sides cite to a number of cases in support of their respective positions regarding the date of Lexington's alleged injury. None of the cases cited appears to be directly on point.

The Defendants cite primarily to Commonwealth v. Johnson Insulation, 425 Mass. 650 (1997). Docket No. 23 at 8-11. One of the issues in that case was whether prejudgment interest should be assessed on the entire damages awarded, which included the projected cost of future

---

[6] The Defendants argue that the Court should still dismiss the case even if it does not rely on the exhibits attached to their memorandum of law. To this end, Defendants appear to be arguing probabilities. They argue that the installation of PCBs stopped in 1978 and therefore there is not a high probability that the PCBs here were installed between 1973 and 1978. See Docket No. 23 at 4, 11. However, the Iqbal plausibility standard "is not akin to a 'probability requirement.'" Iqbal, 556 U.S. at 678.

abatement of asbestos contamination in a building, or just the portion of the damages representing abatement costs that the Commonwealth had incurred prior to the date of the judgment.  Id. at 664-65.  The Massachusetts Supreme Judicial Court ("SJC") held that interest should be assessed on the full amount of the judgment.  Id. at 667.  In so doing, the SJC stated that "[t]he injury to the Commonwealth's property occurred when asbestos-containing products were installed in its buildings.  Any damages to which the Commonwealth was entitled, whatever that amount might be and whenever it might be awarded, was due from the moment of injury."  Id. at 665.

The Defendants also cite to a number of insurance coverage cases for the proposition that injury to property occurs when the defective materials are installed.  See Maryland Casualty Co. v. W.R. Grace & Co., 23 F.3d 617, 626-28 (2nd Cir. 1994) (holding damage-in-fact occurs upon installation of asbestos-containing product in buildings; "[t]he actual injury to property–the presence of the asbestos hazard–occurs upon installation and exists regardless of whether it has yet been discovered by the building owners."); Eljer Mfg., Inc. v. Liberty Mut. Ins. Co., 972 F.2d 805, 814 (7th Cir. 1992) (holding that the incorporation of a defective product into another product inflicts physical injury at the moment of incorporation).  However, those cases apply the law of New York and Illinois.  In addition, the issue in those cases was the date of the injury for purposes of determining coverage under a comprehensive general liability policy.  Maryland Casualty Co., 23 F.3d at 624; Eljer, 972 F.2d at 806-807.

Lexington relies primarily on Lewis v. General Electric Co., 254 F. Supp. 2d 205 (D. Mass. 2003), which concerns land contaminated by PCB-containing waste used as fill in a neighborhood for more than thirty years.  Id. at 208.  Lewis appears to have been decided on the

specific facts of that case.  One subgroup of landowner plaintiffs did not discover the contamination of their properties until after they acquired title.  Id. at 210.  The defendant argued that these plaintiffs could not recover on their claims because the injury to the property occurred prior to their acquisition of title and the prior owners had not assigned their claims to the plaintiffs.  Id. at 214.  The court held that the plaintiffs could maintain a cause of action because in that case, "without knowledge there was no damage" appears to rest on the specific nature of the injury claimed and the unfairness that would result if  "a tortfeasor in these circumstances could escape liability by the happenstance of a property sale."  Id. at 215.  The court noted that the case had a "peculiar feature" in that the prior owners, who were ignorant of the damage, suffered no distress or monetary loss as a result of the damage to their property, while the discovery of the contamination caused the plaintiffs distress and anxiety and lowered their property value and hence, "*knowledge* of the injury is part and parcel of the injury itself."  Id. at 216 (emphasis in original).  In addition, in this case, the plaintiffs brought claims for trespass, negligence, nuisance, and under CERCLA and its Massachusetts counterpart, Chapter 21E.  Id. at 206.

The parties have not cited, and the Court's research has not discovered, any cases directly on point.  In cases such as this one, the determination of the date of the injury appears to be a complex question that turns on the facts of the case, such as the nature of PCBs and how they damage and contaminate property.  Even if the Court were to determine that the injury occurred on the date of installation, the Court is unable, at this stage and based on the record before it, to conclusively determine that installation occurred prior to 1971 or 1973.  The Court "'is wary of ruling prematurely when the allegations in the Complaint can reasonably be interpreted as

raising factual questions' that are better considered at the summary judgment stage on a more

fully developed record." Ramirez v. DeCoster, No. 2:11-cv-00294-JAW, 2012 WL 2367179, at

*13 (D. Me. June 21, 2012) (citations omitted).  Accordingly, this Court finds that Lexington's

allegations are sufficient to overcome the motion to dismiss on this basis, although factual

development may reveal that Lexington's alleged injury did occur before 1971 or 1973.[7]

    4.    <u>Chapter 93A</u>

The Defendants argue that Lexington's Chapter 93A claim fails because Lexington has

not averred that the Defendants committed unfair and deceptive acts subsequent to the effective

date of Chapter 93A.  Docket No. 23 at 11-14; Docket No. 33 at 6-9.  This Court disagrees.

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or

commerce."  Mass. Gen. Laws ch. 93A, §2(a).  A successful claim under Chapter 93A requires a

showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss

suffered by the consumer, and (3) a causal connection between the defendant's deceptive act or

practice and the consumer's injury.  <u>Casavant v. Norwegian Cruise Line, Ltd.</u>, 76 Mass. App. Ct.

73, 76 (2009), <u>aff'd</u>, 460 Mass. 500 (2011) (citing G.L. c. 93A, § 9); <u>Hershenow v. Enterprise</u>

<u>Rent-A-Car Co. of Bos., Inc.</u>, 445 Mass. 790, 797 (2006).  "Chapter 93A liability is decided

---

[7] The Court is mindful of the potential costs of discovery in a case such as this one.  The <u>Twombly</u> court highlighted this issue but also stated "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" <u>Twombly</u>, 550 U.S. at 556.  Nevertheless, the District Court "has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation."  <u>Vivid Techs., Inc. v. Am. Science & Engineering, Inc.</u>, 200 F.3d 795, 803-804 (1st Cir. 1999) (citing Fed. R. Civ. P. 16(b), (c), 26(b), 42(b)).  "When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved."  <u>Id.</u> (citation omitted).  Here, one solution might be to conduct early discovery limited to the issue of injury and/or privity, which may then allow the Defendants to file a motion for summary judgment if appropriate.

case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law." Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

Chapter 93A was enacted in 1967 and went into effect on March 26, 1968. St. 1967, c. 813. Lexington brings claims under Section 9, which became effective on November 13, 1969. St. 1969, c. 690. The rights provided under Chapter 93A are substantive and, because such rights did not exist prior to the statute's enactment, Chapter 93A "may not be retroactively applied to acts committed prior to its effective date." Lewis v. Ariens Co., 49 Mass. App. Ct. 301, 307 (2000), reversed in part on other grounds, 434 Mass. 643 (2001). Accordingly, Lexington may not maintain a Chapter 93A claim unless it shows that the Defendants' acts occurred after November 13, 1969.

A breach of the warranty of merchantability may support a violation of Chapter 93A. Maillet v. ATF-Davidson Co., Inc., 407 Mass. 185, 193 (1990); see also One Beacon Ins. Co. v. Electrolux, 436 F. Supp. 2d 291, 296 (D. Mass. 2006) (citations omitted) ("It is well established that with respect to a Chapter 93A claim under section 9, a defendant violates chapter 93A if the defendant breached the warranty of merchantability."). A breach of the warranty of merchantability, however, occurs at the time of the original sale, not at the time of injury. Lewis v. Ariens Co., 434 Mass. 643, 650 n. 19 (2001). In addition, under certain circumstances, a defendant may have a continuing duty to warn of defects discovered after the sale of a product.

15

Lewis, 434 Mass. at 647-49; Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 23 (1998).  Here, it is not clear when the breach occurred.  The Complaint does not state the date when PCBs were sold to and installed in the Lexington schools.  The Defendants claim that all PCBs at Lexington schools "were sold some time prior to July, 1961."  Docket No. 23 at 14.  However, that statement is based on documentation that this Court has declined to consider in connection with the motion to dismiss.  In any event, the duty to warn may have continued after the sale date. Here, Lexington alleges that Old Monsanto knew of, and failed to warn it, of the dangers of PCB.  Complaint, ¶¶ 26-29, 54.  It also alleges that the use of PCBs at schools was foreseeable and that the presence of PCBs in schools built or renovated between 1950 and 1978 was known. Id. at ¶¶ 16, 41.  Lexington supports its allegations with references to specific documents.  Id. at ¶¶ 26, 28.  Accordingly, the Complaint states a plausible claim of breach of warranty of merchantability based on a continuing duty to warn.

In summary, the Court has found that Lexington's breach of warranty claims should survive the Defendants' motion to dismiss.  As the breach of warranty claims may also give rise to Chapter 93A liability and the Court cannot conclude from the face of Lexington's Complaint that the alleged deceptive or unfair acts occurred prior to the effective date of the statute, the Court recommends denial of the motion to dismiss on that basis.

B.     Motion For A More Definite Statement

Defendants move for a more definite statement if the District Court denies their motion to dismiss.  Docket No. 24.  Defendants seek an order requiring Lexington to serve an amended complaint identifying specific facts: (1) the date when the PCBs incorporated into Estabrook were manufactured; (2) the date when the PCBs incorporated into Estabrook were first sold; (3)

the person or firm who first purchased the PCBs incorporated into Estabrook from the Defendants or their alleged predecessor; (4) the date of each successive sale of the PCBs incorporated into Estabrook; (5) the persons or firms who later bought and sold the PCBs incorporated into Estabrook; (6) the person or firm who incorporated the PCBs into window caulk or other construction material later incorporated into Estabrook; (7) the person or firm who sold the PCB-containing window caulk to the window manufacturer or assembler or installer; (8) the date when the window assemblies with PCB-containing caulk were sold to Lexington (or its architect, general contractor, or curtain wall or glazing subcontractor); (9) the date when the window assemblies with PCB-containing caulk were actually installed in Estabrook; (10) the unfair and deceptive acts allegedly committed by the Defendants; and (11) the date(s) upon which the Defendants' alleged unfair and deceptive acts occurred.  Id. at 1-2.

A motion for a more definite statement is granted only "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  Rule 12(e) motions are disfavored "in light of the availability of pretrial discovery procedures."  Cox v. Marine Mar. Acad., 122 F.R.D. 115, 116 (D. Me. 1988).  The Federal Rules of Civil Procedure "employ notice pleading, and, for this reason, motions for a more definite statement are not favored."  Delta Educ., Inc. v. Langlois, 719 F. Supp. 42, 50 (D.N.H. 1989) (citation omitted).  Rule 12(e) motions are designed to "strike at unintelligibility, rather than at lack of detail in the complaint."  Cox, 122 F.R.D. at 116; Hilchey v. City of Haverhill, 233 F.R.D. 67, 69 (D. Mass. 2005).  In ruling on a Rule 12(e) motion, a court often considers whether the movant has knowledge of the information sought.  See Town of Hooksett School Dist. v. W.R. Grace & Co., 617 F. Supp. 126,

135 (D.N.H. 1984) (defendant "ably situated" to ascertain facts).  Therefore, a Rule 12(e) motion

should be granted "only when a party is unable to determine the issues he must meet."  Cox, 122

F.R.D. at 116.

 As drafted, the Complaint provides enough information for the Defendants to understand

the nature and extent of Lexington's claims against them and to enable them to prepare an

answer.  Indeed, the Defendants concurrently filed motion to dismiss articulates multiple

potential defenses, which belies their claim that additional allegations are necessary for them to

"formulate a meaningful response to the Complaint or determine any defenses they may have."

Docket No. 25 at 3.

 Providing the level of detail requested by Defendants is not the purpose of a motion for a

more definite statement.  If a party "wishes to secure more detailed information as to how the

pleading party intends to prove [its] allegations [it] should not be permitted to utilize the motion

for a more definite statement . . . but should be compelled to look to the procedures for discovery

under the (federal) rules, which provide for obtaining such details."  Wheelock v. Rhode Island,

No. 06-366 S, 2006 WL 3391507, at *1 (D.R.I. Nov. 22, 2006) (citation omitted).  Accordingly,

this Court recommends that the District Judge deny the Defendants' motion for a more definite

statement.

## IV.    RECOMMENDATION

 For the foregoing reasons, I recommend that the District Court deny the Defendants'

motions to dismiss and for a more definite statement.

## IV.    REVIEW BY DISTRICT JUDGE

 The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any

party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  <u>See</u> Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  <u>See</u> <u>Phinney v. Wentworth Douglas Hospital</u>,199 F.3d 1 (1st Cir. 1999); <u>Sunview Condo. Ass'n v. Flexel Int'l</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge