UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TOWN OF LEXINGTON, on behalf of itself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civ. Action No. 12-cv-11645 |
| PHARMACIA CORPORATION, SOLUTIA, INC. and MONSANTO COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**  March 24, 2015

### I. Introduction

Plaintiff Town of Lexington ("Lexington") brings this putative class action against Pharmacia Corporation ("Pharmacia"), Solutia Inc. ("Solutia") and Monsanto Company ("New Monsanto") alleging breach of the implied warranty of merchantability, due to design defect and failure to warn, and violation of Massachusetts's consumer protection statute, Chapter 93A, §§ 2, 9. Defendants Solutia and New Monsanto now move for summary judgment. For the reasons stated below, the Court DENIES the motion as to Solutia and requests further briefing regarding New Monsanto.

### II. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as any material fact and the movant is entitled to judgment as a matter of

1

law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must produce specific facts "sufficient to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). The Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). However, the non-moving party cannot simply rely on conclusory allegations and improbable inferences. Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995).

III.     **Factual Background**

Lexington brought this putative class action seeking recovery for environmental remediation of property damage allegedly suffered because of the presence of polychlorinated biphenyls ("PCBs"), which were banned by Congress as of 1979, in the indoor air of the Estabrook Elementary School. D. 1; D. 134 at 1. Lexington contends that Pharmacia was the exclusive manufacturer of PCBs in the United States during the relevant time period and thus is responsible for the environmental damage they allegedly caused. D. 1 ¶¶ 3, 39.

Pharmacia, known until 1997 as Monsanto ("Old Monsanto" or "Pharmacia"), formerly operated three business units: chemical, through which it manufactured and sold PCBs; agricultural; and pharmaceutical. D. 135 ¶ 1, D. 134 at 1. In September 1997, Old Monsanto formed and spun-off defendant Solutia, which assumed ownership and operation of substantially all of Old Monsanto's chemical business. D. 135 ¶ 2.

In 2000, Old Monsanto merged with Pharmacia & Upjohn, Inc. Id. ¶ 4. The new entity assumed the Pharmacia name. Id. Pharmacia then transferred its agricultural business to a new corporation, defendant New Monsanto, which became an independent company in 2002. Id. ¶¶ 5-6. Pharmacia retained the pharmaceuticals business. Id. ¶ 5.

## IV. Procedural History

On September 4, 2012, Lexington brought this suit, on behalf of itself and a putative plaintiff class, alleging that it sustained property damage due to the defendants' breach of the implied warranty of merchantability and violation of Mass. Gen. L. c. 93A in their manufacture and sale of PCBs. D. 1. Solutia and New Monsanto now move for summary judgment. D. 133. The Court held a hearing on the pending motion on January 14, 2015 and took the matter under advisement. D. 218.

## V. Discussion

Solutia and New Monsanto (the "Moving Defendants") argue they are entitled to summary judgment because Lexington has no direct cause of action against them. D. 134 at 4. Not only did Solutia and New Monsanto not manufacture PCBs, they also did not exist during the relevant time period. Id. Solutia and New Monsanto contend that they are mere indemnitors against which a direct cause of action does not lie. Id. At the hearing on the Moving Defendants' motion, they made the further argument that

3

Lexington cannot press claims against them premised on successor liability because their predecessor entity, Pharmacia, still exists.[1]  See D. 239 (transcript of 1/14/15 hearing). Last, the Moving Defendants argue that any liability they incurred was pursuant to agreements that contain clauses negating third-party beneficiary rights.  D. 134 at 7.

The Moving Defendants rely on several agreements relevant to their corporate histories.  First, Solutia and Pharmacia (then Old Monsanto) executed the Distribution Agreement as part of the creation and spin-off of Solutia in 1997.  D. 134 at 4; D. 136-2. Second, the Moving Defendants cite the Separation Agreement entered into by Pharmacia and New Monsanto upon New Monsanto's creation in 2000.  D. 134 at 4-5, D. 136-4. Finally, as part of Solutia's reorganization under Chapter 11 of the Bankruptcy Code, Solutia and New Monsanto divided liabilities in the 2007 Settlement Agreement.[2]  D. 134 at 5, D. 135 at ¶¶ 12-14, D. 136-8.

---

[1] The Moving Defendants concede that a consumer may bring a claim for breach of the implied warranty of merchantability directly against a product manufacturer.  D. 134 at 4; Jacobs v. Yamaha Motor Corp., 420 Mass. 323, 331 (1995).

[2] Lexington objects that the agreements are inadmissible because they constitute hearsay under Fed. R. Evid. 802, are not properly authenticated under Fed. R. Evid. 901, and are submitted by means of an affidavit that is not based on personal knowledge, as required by Fed. R. Civ. P. 56(c)(4).  D. 191 at 4-5; D. 195.  To the extent that Lexington objects pursuant to Fed. R. Civ. P. 56(c)(2), which allows a party to object that cited material cannot be presented in an admissible form, the Court notes that the agreements, upon a proper foundation, would be admissible as business records or court records.  Fed. R. Evid. 803(6) & 902.  Lexington does not appear to dispute the authenticity of the submitted documents, nor does it assert that the documents cannot be presented in admissible form.  D. 191 at 4-5.  It takes issue only with the affidavit accompanying the documents.  Id.  Moreover, as Lexington itself requests, D. 193, pursuant to Fed. R. Evid. 201, the Court may take judicial notice of documents filed in the bankruptcy matter.  The Court ALLOWS Lexington's request.

4

### A. Solutia

A successor corporation is generally not liable for the torts of its predecessor unless one of four exceptions applies: "(1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations."[3] DeJesus v. Bertsch, Inc., 898 F. Supp. 2d 353, 358 (D. Mass. 2012) (quoting Dayton v. Peck, Stow & Wilcox Co., 739 F.2d 690, 692 (1st Cir. 1984)).

At the hearing on the pending motion, the Moving Defendants relied primarily on two cases for the proposition that successor liability does not apply where the original manufacturer of the product at issue still exists. First, in Brooks v. Specialty Minerals, Inc., 850 F. Supp. 2d 334, 340 (D. Mass. 2011), a defendant moved for summary judgment because it never worked at the site where the plaintiff's son was accidentally electrocuted. Id. at 340. The defendant had purchased the assets of its co-defendant that had worked at the site, and the purchase agreement provided only for the purchase of assets, not the assumption of liability. Id. at 337, 340. The plaintiff argued that successor liability applied because the defendants' arrangement was a *de facto* merger. Id. at 341. The court declined to impose successor liability because the predecessor company was still in existence and because the agreement between the co-defendants expressly rejected

---

[3]To the extent that Delaware law controls, it is in accordance with Massachusetts law with respect to successor liability. See Stayton v. Clariant Corp., No. K05C-05-042 WLW, 2013 WL 5783814, at * 4 (Del. Super. Ct. Aug. 13, 2013) (stating same general rule and four exceptions).

successor liability.  Id.  The Moving Defendants rely on the court's explanation that "whatever the reach of successor liability under the law of Massachusetts, the doctrine has no applicability where, as here, the original manufacturer remains in existence to respond in tort for its alleged negligence."  Id. (quoting Roy v. Bolens Corp., 629 F. Supp. 1070, 1073 (D. Mass. 1986)).

Taken in context, this ruling does not support the Moving Defendants' argument. The plaintiff in Brooks sought to impose successor liability on a theory of *de facto* merger because the purchase agreement expressly rejected the imposition of successor liability.  A *de facto* merger, however, is unlikely where both the predecessor and successor continue to exist.  The case does not speak to the imposition of successor liability under the theory that the successor expressly or impliedly assumed the liability of the predecessor, the theory expounded by Lexington in the case at bar.  D. 191 at 6-7. Successor liability may have no application on a theory of *de facto* merger where the predecessor entity continues to exist, but a successor who assumes the liabilities of its predecessor may not escape liability simply because the predecessor lives on.  Cf. id. at 340-41.  An express assumption of liability of the successor would be meaningless if it is unenforceable during the continued life of the predecessor entity.

The second case relied upon by the Moving Defendants, Roy v. Bolens Corp., 629 F. Supp. 1070 (D. Mass. 1986), is inapplicable to the present context for the same reasons.  The plaintiff in that case argued that the defendant Bolens was a mere continuation of its co-defendant.  Id. at 1072.  Among the indicia of continuation was the existence of only one corporation after the completion of the asset sale.  Id.  Bolens's predecessor, however, continued to exist, precluding the imposition of successor liability

6

on Bolens.  Id.  In contrast, Solutia is not alleged to be a mere continuation of Pharmacia; it is alleged to have assumed liability for tort claims related to Old Monsanto's chemical business.  D. 191 at 6.

The Distribution Agreement describing Solutia's spin-off makes it clear that Solutia expressly assumed Old Monsanto's tort liability and, therefore, the doctrine of successor liability applies here.  The relevant section of the Distribution Agreement states that Solutia "shall retain or *assume*, as the case may be, *and shall indemnify* and hold harmless each member of Monsanto Group [defined as Old Monsanto n/k/a Pharmacia and its subsidiaries] . . . from and against . . . all Chemicals Liabilities."[4]  D. 136-2 § 4.03(b) (emphasis added).  In other words, Solutia not only indemnified Old Monsanto, it also "assume[d]" "all Chemicals Liabilities."  "Although the provision goes on to additionally provide indemnification for liabilities . . . , the compound nature of the provision in no way detracts from the clarity of the assumption of liabilities language." Aluminum Co. of Am. v. Beazer E., Inc., 124 F.3d 551, 566 (3rd Cir. 1997) (concluding that purchaser assumed CERCLA liability in purchase agreement).  A plain reading of the Distribution Agreement indicates that Solutia both assumed liability and indemnified Pharmacia against liability.

This reading is also supported by documents from Solutia's 2007 reorganization under Chapter 11 of the Bankruptcy Code.  In Solutia's memorandum to the bankruptcy court in support of approval of the Settlement Agreement, Solutia explained that that the Separation Agreement between New Monsanto and Pharmacia imposed on New

---

[4] "Chemicals Liabilities" are defined broadly to include "all Liabilities relating exclusively to or arising exclusively from the . . . Chemicals Business or the Former Chemicals Business."  D. 136-2 at 9 ¶ 19.

7

Monsanto the obligation to "assume and indemnify Pharmacia . . . for liabilities Solutia *assumed in the spin-off* to the extent that Solutia failed to pay, perform or discharge them." D. 203-1 at 20 (emphasis added) (dated June 29, 2007) (filed in bankruptcy court in <u>In re Solutia, Inc.</u>). Solutia also lamented that, absent reallocation of liability, it "could remain liable for all of the legacy liabilities [which include Chemicals Liabilities, as defined above] that it *assumed at the spin-off* based on the doctrine of successor liability." <u>Id.</u> at 42 (emphasis added). Moreover, the declaration of Solutia's then-CEO in support of reorganization described a consequence of the spin-off as "caus[ing] Solutia to assume all of the liabilities from a business that Old Monsanto had been operating since the turn of the last century . . . . The most significant of the liabilities that Monsanto imposed upon Solutia . . . relate to healthcare, life and disability insurance and pension costs . . ., environmental remediation and compliance, and litigation related to . . . chemical products formerly manufactured . . . by Old Monsanto in its operations." D. 193-1 at 3-4 ¶ 7.

Solutia's memorandum filed with the bankruptcy court in support of the Settlement Agreement further indicates that Solutia believed it had assumed successor liability upon its spin-off from Old Monsanto. Solutia informed the bankruptcy court that it "likely would be found to be the successor to Old Monsanto's Chemicals business because it expressly assumed the legacy liabilities at the spin-off. Solutia has not found a single case where a company that had assumed the liabilities of its predecessor was able to subsequently invalidate that assumption and avoid the imposition of successor liability." D. 203-1 at 42 (internal citations omitted).

8

The doctrine of judicial estoppel requires that Solutia be held to the position that it successfully asserted before the bankruptcy court. "As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant . . . in a prior proceeding . . . ." InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003). Judicial estoppel is applicable if two conditions are met. "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. Second, the responsible party must have succeeded in persuading a court to accept its prior position." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (internal citations omitted). As described above, Solutia represented to the bankruptcy court that it had assumed liabilities from Pharmacia in its spin-off, which is plainly inconsistent with the position it now asserts. The bankruptcy court approved the Settlement Agreement endorsed by Solutia, so it may be reasonably concluded that the bankruptcy court accepted Solutia's position. D. 136-7 (confirming Plan). Solutia, therefore, is estopped from now contending that it never assumed liability from Pharmacia.

The Moving Defendants, nonetheless, attempt to avoid successor liability by pointing to a clause in the Distribution Agreement that negates third-party beneficiary rights. D. 134 at 7. The clause states, in relevant part, that the Distribution Agreement "is solely for the benefit of the parties hereto and their Subsidiaries and Affiliates and is not intended to confer upon any other Persons any rights or remedies hereunder." D. 136-2 at 49 § 10.07. A successor, however, may not shield itself from liability it expressly assumed by virtue of a clause negating third-party beneficiary rights. See Safety-Kleen Corp. v. Arkema, Inc., 380 B.R. 716, 740 (Del. Bankr. 2008) (stating that

"[w]hen a buyer expressly assumes liabilities of a seller, it becomes directly liable therefore, regardless of any language in the sale agreement otherwise purporting generally to disclaim third-party beneficiary rights").

The liability assumed by Solutia in the Distribution Agreement was unaltered by its 2007 reorganization. According to Solutia's plan of reorganization pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"), the Distribution Agreement "shall not survive the Chapter 11 Cases." D. 203-3 at 44. Holders of Tort Claims, however, as defined therein and including the liability alleged here,[5] "shall not be deemed to release [Solutia] . . . on account of any liability arising from or related to the Tort Claims." Id. at 72. Tort claims, such as those alleged by Lexington, "shall be unaffected by the Chapter 11 Cases, this Plan or the Plan Documents. After the Effective Date, the Tort Claims shall be resolved pursuant to applicable law and in the ordinary course of business." Id. at 38 § III.B.8.a. Thus, although the Distribution Agreement was superseded by the Plan Documents, including the Settlement Agreement, Solutia retained the liability it assumed by virtue of the Distribution Agreement (subject to subsequent indemnification rights, discussed below). Solutia assumed direct liability and, therefore, Lexington may assert its claims directly against Solutia. For all of the foregoing reasons, Solutia's motion for summary judgment is DENIED.

B. **New Monsanto**

Lexington largely relies on the argument that the defendants' Rule 30(b)(6) designee, Dr. Robert Kaley, admitted that New Monsanto assumed direct liability for

---

[5] "Tort Claims" refer to all claims "whether currently asserted or asserted in the future, whether known or unknown, arising under tort law for personal injury or property damage arising from exposure to chemicals . . . regardless of whether . . . the alleged exposure occurred before or after the Spinoff." D. 203-3 at 29.

PCB-related torts from Pharmacia. D. 191 at 5-6. According to Lexington, Dr. Kaley "testified that all three defendants have ongoing liability stemming from Pharmacia's past PCB business." Id. The Court, however, questions Lexington's characterization of Dr. Kaley's deposition testimony. Dr. Kaley testified that he did not review any documents in preparation for his testimony. D. 196-1 at 6. He further testified that he was director of environmental affairs at Solutia which "sometimes . . . involved working with attorneys in litigation support." Id. at 8. Dr. Kaley began his career with the defendants as a senior research chemist at New Monsanto, advancing to the position of research group leader. Id. at 8-9. When asked whether New Monsanto "carr[ies] any responsibility for the defense of any PCB-related cases," Kaley responded, "It's my understanding they do, yes." Id. at 16. Dr. Kaley was also asked whether New Monsanto "assumed any liabilities that stem from [O]ld Monsanto's PCB manufacturing business." After counsel objected that the question called for a legal conclusion from a lay witness, Dr. Kaley again answered, "It's my understanding that they do, yes." Id. at 17. Dr. Kaley was asked similar questions about Solutia, to which counsel objected, and which Dr. Kaley also answered in the affirmative. Id. at 17-18.

From the deposition excerpt provided to the Court, it does not appear that Dr. Kaley based his answers on any personal knowledge of the agreements governing the liabilities about which he was asked. And, as indicated by counsel's objections, the questions pertaining to the apportionment of liability among the defendants called for legal conclusions from a witness without a legal background. It has been observed that witness testimony offering legal conclusion is inadmissible or does not bind the party who designated him. See S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco

11

Control, 731 F.3d 799, 811 (8th Cir. 2013) (stating that "[a] 30(b)(6) witness's legal conclusions are not binding on the party who designated him . . . ."); United States v. Noel, 581 F.3d 490, 496 (7th Cir. 2009) (noting that "[w]e have held repeatedly that lay testimony offering a legal conclusion is inadmissible because it is not helpful to the jury, as required by [Fed. R. Evid.] 701(b)"); AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213, 229 n.9 (3rd Cir. 2009) (noting that Rule 30(b)(6) designee's own interpretation of a contract was a legal conclusion not binding on designating defendant); Torres v. Cnty. of Oakland, 758 F.2d 147, 150 (6th Cir. 1985) (observing that "[t]he problem with testimony containing a legal conclusion is in conveying the witness's unexpressed, and perhaps erroneous, legal standards to the jury. This invades the province of the court to determine the applicable law and to instruct the jury as to that law") (internal quotation marks omitted). Lexington's proffer of deposition testimony of questionable admissibility similarly does not support the inference that the Moving Defendants assumed liability.

A review of the agreements apportioning liability among the defendants demonstrates that, unlike Solutia, New Monsanto did not expressly assume direct liability for tort claims like those asserted by Lexington. The relevant provision of the Separation Agreement between Pharmacia and New Monsanto states that "Monsanto hereby retains, assumes and agrees to pay, discharge, perform and satisfy in full, and to indemnify, defend and hold harmless each member of the Pharmacia Group . . . from and against . . . all Monsanto Liabilities. . . ." D. 136-4 § 3.03(b). New Monsanto, therefore, assumed and indemnified Pharmacia against all Monsanto Liabilities, which are defined to include "all Liabilities of either [Pharmacia or New Monsanto] that were assumed by Solutia. . .

12

in connection with the spinoff of Solutia, to the extent that Solutia fails to pay, perform or discharge such Liabilities. . . ." Id. at 18. As discussed above, the Distribution Agreement, executed in connection with the spinoff of Solutia, indicated that Solutia assumed liability related to Pharmacia's chemical business. The later Separation Agreement, therefore, obligated New Monsanto to assume and indemnify Pharmacia for all liabilities assumed by Solutia, including liability related to the chemical business, but only to the limited extent that Solutia first fails to pay such liabilities. This shows that New Monsanto is not directly liable; instead, its liability is to limited to sums left unpaid by Solutia.

The Settlement Agreement that was part of Solutia's bankruptcy reorganization was intended to reallocate tort liability from Solutia to New Monsanto. D. 203-1 at 28. The Settlement Agreement's indemnification provision states that "Monsanto shall indemnify Solutia . . . for any Losses which [Solutia] suffers, sustains or becomes subject to, as a result or arising out of . . . any Legacy Tort Claims." D. 136-8 at 33 § 5.02. "Legacy Tort Claims" are defined to include legal claims which constitute "Chemical Liabilities assumed by Solutia under the Distribution Agreement" and legal claims which are for "property damage . . ., products liability or premises liability or other damages arising out of or related to exposure to asbestos, PCB, . . . other chemical exposure or environmental contamination . . . ." D. 136-8 at 15. New Monsanto, therefore, must indemnify Solutia for the kind of liability at issue in this case, but the Settlement Agreement does not appear to indicate that New Monsanto directly assumed Solutia's liability.

The Settlement Agreement, like the Distribution Agreement, contains a negation of third-party beneficiary rights. D. 136-8 at 45 § 10.06. This means that Lexington may not seek to enforce the indemnification provision agreed to by Solutia and New Monsanto. Liberty Mut. Ins. Co. v. Household Int'l, Inc., 136 F. Supp. 2d 5, 8 (D. Mass. 2001) (enforcing third-party beneficiary clause as conclusive evidence of intent); Volpe Constr. Co. v. First Nat'l Bank of Boston, 30 Mass. App. Ct. 249, 256-57 (1991) (stating that "if two contracting parties expressly provide that some third party who will be benefited by performance shall have no legally enforceable right, the courts should effectuate the expressed intent by denying the third party any direct remedy") (quoting 4 Corbin, Contracts, § 777, at 25 (1951)). The Plan also indicates that the reallocation of liability was intended to be only between the parties to the Settlement Agreement, Solutia and New Monsanto. For example, the Plan states that "such allocations are solely as between Solutia and Monsanto and nothing in the Monsanto Settlement Agreement shall impair or adversely affect the Tort Claims." D. 203-3 at 38 § V.B.8.a.

*Amicus curiae* Town of Westport and Westport Community Schools ("Westport") point to the Plan to argue that the parties intended more than a mere indemnification relationship. D. 203 at 13. The language of the Plan does not explicitly indicate an indemnification arrangement, but it also does not state that New Monsanto assumed direct liability from Solutia. For example, the provision of the Plan addressing tort claims states that "pursuant to the Monsanto Settlement Agreement, Monsanto shall take financial responsibility, as between itself and the Reorganized Solutia only, for the management and payment of the Legacy Tort Claims, including all costs related to the defense, mediation, arbitration, settlement and any judgment with respect to the Legacy

Tort Claims and Reorganized Solutia shall be financially responsible for the Solutia Tort Claims [defined as all Tort Claims other than Legacy Tort Claims], if any." D. 203-3 at 20 & § III.B.8.a. Restated more succinctly, New Monsanto accepted "financial responsibility" for "the management and payment of the Legacy Tort Claims," including "all costs related to the defense" "and any judgment with respect to the Legacy Tort Claims." While this directive could be consistent with an assumption of liability, as urged by Westport, it is also consistent with the plain terms of the Settlement Agreement, which explicitly outline an indemnification arrangement without mention of an assumption of liability. See also D. 203-3 at 45 § V.B.2 ("Monsanto shall, pursuant to the Monsanto Settlement Agreement, agree to . . . take financial responsibility, as between itself and reorganized Solutia only, for the management and payment of the Legacy Tort Claims, all as more fully set forth in the Monsanto Settlement Agreement.") and § V.B.4 ("Monsanto shall take financial responsibility, as between itself and Reorganized Solutia only, for the management and payment of Legacy Tort Claims and be solely responsible, as between itself and Reorganized Solutia only, for all costs related to the defense, mediation, arbitration, judgment and settlement of the Legacy Tort claims and shall indemnify Reorganized Solutia, pursuant to the terms of the Monsanto Settlement Agreement, with respect to such Legacy Tort Claims.").

Westport also points to the Plan's carve-out from an injunction in favor of New Monsanto and Pharmacia as evidence of Lexington's ability to maintain its claims directly against New Monsanto. The carve-out reads: The "terms of this injunction shall not prevent . . . the holders of Tort Claims . . ., causes of action, or rights relating to Environmental Liability from exercising their rights against Monsanto [or] Pharmacia . . .

with respect thereto, or . . . any party from asserting any cause of action against Monsanto or Pharmacia . . . arising in tort for personal injury or property damage arising from exposure to chemicals or other substances." D. 203-3 at 70 § X.A.2.

It is difficult to square this provision with the Settlement Agreement's indemnification provision. Other then this injunction carve-out, there appears to be no evidence that a plaintiff may assert a tort arising from chemical exposure against New Monsanto directly. Solutia's memorandum in support of the Settlement Agreement states that, upon the effective date of the bankruptcy, all persons (as defined by the Bankruptcy Code) are "enjoined from taking any action with regard to a claim against Monsanto or Pharmacia related to Solutia. The releases and injunctions, however, will not apply to claims for which Monsanto is responsible under the Monsanto Settlement . . . ." D. 203-1 at 49.

Moreover, the Plan states that tort claim holders do not release Solutia, New Monsanto or Pharmacia with respect to liability arising from tort claims: "[T]he Holders of Tort Claims shall not be deemed to release the Debtors . . . on account of any liability arising from or related to the Tort Claims and . . . the Holders of Tort Claims . . . , as a result of the Monsanto Settlement Agreement, shall not be deemed to release Monsanto or Pharmacia . . . on account of any liability from or related to the Tort Claims." D. 203-3 at 72 § X.B.2.

This provision seems to support the viability of a direct claim against New Monsanto, but, as the Moving Defendants assert, D. 209 at 10, the provision is subject to the following limitations: "the terms of this release shall not prevent Monsanto or Pharmacia from enforcing the terms of this Plan and the Plan Documents [including the

Settlement Agreement];" and "nothing in this paragraph shall affect the rights, defenses, obligations or claims arising between Monsanto and Pharmacia, including rights, defenses, obligations and claims arising from or existing under the Separation Agreement." Id. Thus, the Plan provides for the ability to bring tort claims against New Monsanto, but, at the same time, New Monsanto may enforce the terms of both the Settlement Agreement and the Separation Agreement to preserve its status as indemnitor.

The intent of the parties is difficult to discern from the various agreements apportioning liability among the three defendants. They make clear, however, that Solutia assumed direct liability for tort claims premised on Pharmacia's chemical business. D. 136-2 at 22 § 4.03(b). Solutia, in turn, as part of its bankruptcy reorganization, reallocated that liability to New Monsanto by way of an indemnity arrangement that does not confer third-party rights. D. 136-8 at 33 § 5.02. The Plan encompassing the Settlement Agreement appears to allow claims against New Monsanto such as those asserted by Lexington, but it also preserves New Monsanto's right to enforce its status as indemnitor. Importantly, neither the Plan nor the Settlement Agreement indicates that New Monsanto directly assumed Solutia's liability. The only agreement in which New Monsanto assumes liability is the Separation Agreement, and then only to the extent that Solutia does not pay.

The briefing provided by the parties and Westport does not provide sufficient guidance regarding how to reconcile the injunction carve-out and limited release in the Plan on the one hand with the Settlement Agreement's indemnification provision and the Separation Agreement's liability provision on the other. The Court, therefore, allows leave to the parties and Westport to file briefs on this issue of no more than ten pages

each on this singular issue. New Monsanto and Westport must file their memoranda no later than April 7, 2015, with Lexington's reply due ten days later, on April 21, 2015.

## VI. Conclusion

For the foregoing reasons, Solutia and New Monsanto's motion for summary judgment, D. 133, is DENIED IN PART as to Solutia. The Court reserves its decision regarding New Monsanto until it has reviewed the requested additional briefing. Lexington's request for judicial notice, D. 193, is ALLOWED.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge